UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHARITY N. FULLERTON, | ) |
| Plaintiff, | ) No. CV-07-3074-CI )  |
| v. | ) ORDER GRANTING PLAINTIFF'S ) MOTION FOR SUMMARY JUDGMENT ) AND REMANDING FOR FURTHER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) PROCEEDINGS PURSUANT TO 42 ) U.S.C. § 405(g) ) ) |
| Defendant. | ) ) |

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 21, 24.) The parties have consented to proceed before a magistrate judge. (Ct. Rec. 9.) Attorney D. James Tree represents Charity Fullerton (Plaintiff); Special Assistant United States Attorney David Burdett represents Defendant. After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and remands the matter to the Commissioner for further proceedings pursuant to 42 U.S.C. § 405(g).

Plaintiff protectively filed applications for disability insurance benefits and Supplemental Security Income (SSI) benefits on November 3, 2004, alleging an onset date December 1, 2002. (Tr. 76, 119, 514.) She claims disability due to lupis, heart problems, muscle weakness, and shortness of breath. (Tr. 68.) Following a

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR FURTHER PROCEEDINGS PURSUANT TO
42 U.S.C. § 405(g) - 1

denial of benefits and reconsideration, a hearing was held before Administrative Law Judge (ALJ) Peter Baum on February 22, 2007. (Tr. 30, 509-33.) The ALJ denied benefits; review was denied by the Appeals Council. (Tr. 4-6.) This appeal followed. Jurisdiction is appropriate pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

Detailed facts are found in the transcript of proceedings (Tr.) and are briefly summarized here. At the time of the hearing, Plaintiff was 31 years old with a ninth-grade education and high-school equivalency degree. (Tr. 514.) She was single and lived with her significant other who was a disabled veteran. (Tr. 515.) She testified that he did the shopping, cooking, household chores and yard work. (Tr. 519.) She had three children under the age of 18 who lived with Plaintiff's mother. (Tr. 516.) She had past work experience as a caregiver. She testified she quit her last job in January 2003 due to joint swelling and pain, but later stated she was laid off due to lack of work. (Tr. 69, 143, 514-15, 530-31.) She stated she had difficulty eating, sleeping, and concentrating due to her medical condition and medications. (Tr. 522-26.) She reported she suffered joint pain and could sit without pain for 10 to 15 minutes. She could not stand without moving around. (Tr. 527.) She stated on bad days she stayed in bed all day. (*Id*.) She did not believe she could sustain an eight-hour day of work. (Tr. 528.)

## ADMINISTRATIVE DECISION

The ALJ concluded Plaintiff had not engaged in substantial gainful activity and was insured for disability benefits through the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR FURTHER PROCEEDINGS PURSUANT TO
42 U.S.C. § 405(g) - 2

date of the decision. (Tr. 15.)  At steps two and three, the ALJ found Plaintiff had severe impairments[1] of "systemic lupus erythematosus [SLE] and a mood disorder," but these impairments did not meet the requirements of 20 C.F.R. Part 404, Subp. P, Appendix 1 (Listings).  (*Id.*)  At step four, ALJ Baum found Plaintiff was able to perform the full range of sedentary work but could not perform her past relevant work.  Applying the Medical Vocational Guidelines (Grids), he concluded Plaintiff was not "disabled" as defined by the Social Security Act.  (*Id.*)

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Soc. Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

---

[1] Although the ALJ did not state precisely that these impairments were "severe" in his step two findings, he proceeded with the sequential evaluation steps required after a step two finding of "severe impairment" that meets the duration requirement. 20 C.F.R. §§ 404.1520 (a)(4); 416.1520 (a)(4).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR FURTHER PROCEEDINGS PURSUANT TO
42 U.S.C. § 405(g) - 3

Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

## SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . " 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.
>
> In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id.* (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

## ISSUES

The question presented is whether there was substantial evidence to support the ALJ's decision denying benefits and, if so, whether that decision was based on proper legal standards.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR FURTHER PROCEEDINGS PURSUANT TO
42 U.S.C. § 405(g) - 4

Plaintiff asserts the ALJ erred when he (1) failed to fully develop the record; (2) improperly assessed her residual functional capacity; and (3) did not meet his step five burden. (Ct. Rec. 22 at 22.)

**DISCUSSION**

**A.   ALJ's Duty to Develop the Record**

In Social Security proceedings, the burden of proof is on the claimant to prove the existence of a severe physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. §§ 404.1508, 416.908. As a threshold to establishing an impairment, it is the claimant's responsibility to produce sufficient objective medical evidence of underlying impairment to show that the impairment, or a combination of impairments, "could reasonably be expected to produce pain or other symptoms." *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986).

Once medical evidence is provided by the claimant, the Regulations state the agency "will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary." 20 C.F.R. §§ 404.1512 (d), 416.912 (d). An ALJ's duty to develop the record further is triggered "only when there is ambiguous evidence or when the record is inadequate for proper evaluation of evidence." *Mayes v. Massanari*, 276 F.3d 453, 4509-60 (9th Cir. 2001) *(citing Tonapetyan v. Halter),* 242 F.3d 1144, 1150 (9th Cir. 2001)). To further develop the record, the Commissioner may order consultative

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR FURTHER PROCEEDINGS PURSUANT TO
42 U.S.C. § 405(g) - 5

1 examinations at the agency's expense. However, the Commissioner has
2 "broad latitude in ordering a consultative examination" *Diaz v.*
3 *Secretary of Health and Human Services*, 898 F.2d 774, 778 (10th Cir.
4 1990). Consultative exams are purchased to resolve a conflicts or
5 ambiguities. 20 C.F.R. § 404.1519a(2). As explained by the Tenth
6 Circuit, the claimant has the burden to raise the issue, *i.e.,* there
7 must be sufficient objective evidence in the record to suggest the
8 "existence of a condition which could have a material impact on the
9 disability decision." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th
10 Cir. 1997.) "Isolated and unsupported comments by the claimant are
11 insufficient, by themselves, to raise the suspicion of the existence
12 of a nonexertional impairment." *Id*.

13 Here, medical records include extensive records of Plaintiff's
14 rheumatology and pulmonary work-up at the University of Washington
15 Medical Center (*see* Tr. 243), as well as treatment records and
16 progress notes from treating physician Jawed Iqbal, M.D., and
17 rheumatology specialist Wendy Eider, M.D. (Tr. 424-77, 479-504.)
18 The only consultative physical examination referenced in the
19 briefing is a "Inpatient Rheumatology Consult" prepared by Joan Woo,
20 M.D., one of the University of Washington Medical Center physicians,
21 on November 16, 2004, during Plaintiff's hospitalization, and two
22 pages of a five-page report electronically signed by Dr. Woo on
23 December 1, 2004. (Tr. 230-32, 251-52.)[2] Dr. Woo gave no opinions

---

[2] For reasons that are unclear, the transcript before the court does not include an accurate index of the medical exhibits. (Tr. 2.) On remand, it is anticipated that the Social Security

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR FURTHER PROCEEDINGS PURSUANT TO
42 U.S.C. § 405(g) - 6

regarding exertional or non-exertional limitations caused by Plaintiff's diagnosed medical condition. Further, neither treating physician submitted a Medical Source Statement with opinions regarding limitations caused by Plaintiff's medical diagnoses of chronic SLE, reoccurring pulmonary problems and the side effects of multiple medications, including steroids. (*See, e.g.,* Tr. 498.) Without a consultative examination by a qualified physician to assess Plaintiff's exertional and non-exertional limitations (especially in light of her pulmonary and rheumatic impairments), and her ability to sustain work, the record is inadequate for a proper evaluation of the evidence. The ALJ's reliance on non-examining agency physicians' opinions is not supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995); *Andrews*, 53 F.3d at 1043.

In support of his finding that Plaintiff's diagnosed depression did not cause non-exertional limitations in her ability to work, the ALJ relied on a psychological evaluation to assess depression and ability to manage funds completed by Jay Toews, Ed.D., in March 2005. (Tr. 142-45.) Although Dr. Toews did not find "evidence of psychological limitations that would impede ability to work," he did not administer objective testing. Rather, he recommended "an MMPI-2 to rule out response validity problems and to more adequately evaluate the claimant's assertions she suffers from depression and

---

Administration will review the record, address the index deficiencies and revise the case records to the form typically presented in these cases.

anxiety." (Tr. 145.)[3]

Dr. Iqbal also recommended Plaintiff see a psychiatrist for her depression and anxiety, but the psychiatrist did not accept medical coupons. (Tr. 487.) Dr. Eider was treating her for anxiety and depression with medication. (*See, e.g.,* Tr. 435.) In light of the examining psychologist's recommendation, and evidence from treating physicians that she complained of symptoms consistent with her diagnosis of depression and was being treated with medication, the ALJ's finding of no mental limitations that would restrict her ability to work is not supported by substantial evidence. *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005).

A psychological evaluation based on objective testing and a

---

[3] It is noted on independent review that during Dr. Toews interview, Plaintiff "denied a history of alcohol and/or street drug use." (Tr. 144.) However, the record includes progress notes from Valley View Health Center in Chehalis, Washington, that indicate a history of methamphetamine use (including IV use) since she was 15 years, referral to inpatient treatment in 2003, failure follow through, and relapse in August 2004. (Tr. 270-75.) The patient name on these records is "Christon Fulleton," and the record does not reflect whether this is a misfiling, misspelling, or if Plaintiff used an alias. On remand, it must be determined if these are Plaintiff's records. If they are, the issue of substance abuse as a contributing factor material to Plaintiff's alleged mental impairments and physical impairments should be addressed. 20 C.F.R. §§ 404.1535, 416.935.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR FURTHER PROCEEDINGS PURSUANT TO
42 U.S.C. § 405(g) - 8

complete mental status evaluation is necessary to properly evaluate Plaintiff's mental limitations and credibility.

**B.   Consideration of Severe and Non-Severe Impairments**

The ALJ must consider the combined effect of a claimant's impairments, severe and non-severe, on the ability to function, without regard to whether each alone is sufficiently severe. *See* 42 U.S.C. § 423(d)(2)(B)(Supp. III 1991).  It is noted on independent review that the ALJ failed to make findings regarding Plaintiff's medically determinable non-severe impairments. (Tr. 15, Finding of Fact 3.)   The medical evidence includes diagnoses and treatment notes from the University of Washington and treating physicians for several conditions not discussed by the ALJ, including reoccurring pleural effusions, connective tissue disorder, Libman-Sacks endocarditis, thrombocytopenia, dysphagia, and low blood pressure. (*See* Tr. 372-84.) The combined effects of these medically determinable impairments should have been considered at step three and four.   20 C.F.R. §§ 404.1526(a)(c), 404.1545(a)(2), 416.926(a)(c), 416.945(a)(2).  The failure to do so is legal error requiring remand. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  On remand, the ALJ may require medical expert testimony to determine if the impairments in combination meet or equal the listings. *Social Security Ruling (SSR) 96-6p.*

Further, it is not clear from the ALJ decision which medical evidence was considered, or the weight given to the reports from Plaintiff's treatment providers and examining physicians at the University of Washington.  For that reason, it is not conclusive that the Commissioner complied with the Regulations that require

consideration of all medical evidence submitted.  20 C.F.R. §§ 404.1527(d), 416.927(d).  On remand, after considering new consultative exams, the ALJ will discuss the entire medical evidence, give his or her interpretation of the evidence (including what, if any weight, is given to medical opinions) and make findings.

**C.   Step Five**

At step five, the burden shifts to the Commissioner to show that (1) the claimant can perform other substantial gainful activity; and (2) a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).  Plaintiff argues the ALJ erred at step five when he applied the Grids instead of calling a vocational expert to opine on Plaintiff's ability to work with non-exertional mental limitations.  (Ct. Rec. 22 at 29.)

The Grids were adopted by the Commissioner to improve the efficiency and uniformity of Social Security benefits proceedings. *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988).  Their use was upheld as valid in *Heckler v. Campbell, 461* U.S. 458 (1983).  The use of the Grids is appropriate where "a claimant's functional limitations fall into a standardized pattern accurately and completely described by the Grids." *Tackett,* 180 F.3d at 1103 (*citing Desrosiers*, 846 F.2d at 577).  "Significant non-exertional impairments make reliance on the Grids inappropriate." *Desrosiers*, 846 F.2d at 577.  Non-exertional limitations are those that do not depend on an individual's physical strength, such as mental, sensory, manipulative and environmental

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR FURTHER PROCEEDINGS PURSUANT TO
42 U.S.C. § 405(g) - 10

limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 (9th Cir. 1989). Where non-exertional limitations exist, "the ALJ must examine independently the additional adverse consequences resulting from the nonexertionary impairment." *Id.* at 1156.  The Grids are then used as a "framework," because alone, the Grids do not fully describe the claimant's abilities and limitations. *Tackett*, 180 F.3d at 1102.

The simple allegation of a non-exertional limitation, however, does not preclude application of the Grids.  *Tackett*, 180 F.3d at 1102.  Non-exertional limitations must be sufficiently severe to limit claimant's functional capacity in ways not contemplated by the Grids.  To rule otherwise would frustrate the purpose of the Grids. *Desrosiers,* 486 F.2d at 577.  The ALJ must first determine if non-exertional limitations significantly limit the range of work permitted by a claimant's exertional limitations.  If the limitation is slight, use of the Grids is appropriate.  *Id.*

Here, the ALJ found Plaintiff had the severe impairments of SLE and a "mood disorder."  (Tr. 15.)  He made no findings as to non-severe impairments supported by the medical record and their impact on Plaintiff's ability to sustain work.  Further development of the record with consultative evaluation by specialists is necessary to provide sufficient evidence regarding what limitations are caused by the documented medical conditions.  Use of the Grids where, as here, there is credible evidence of Plaintiff's fatigue and pain, is not appropriate.

The ALJ's credibility determination is not sufficient to totally reject Plaintiff's subjective complaints of fatigue and pain, symptoms that are consistent with her diagnosis of chronic

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR FURTHER PROCEEDINGS PURSUANT TO
42 U.S.C. § 405(g) - 11

SLE.  (Tr. 14.)  For example, Dr. Toews recognized his evaluation did not establish conclusively that Plaintiff's statements were unreliable because there was no objective testing administered. Plaintiff's statements that she could have worked in 2002 do not impugn completely her complaints and observed fatigue during the entire period at issue.  Further, the activities of daily living cited by the ALJ were qualified by Plaintiff in her report to Dr. Toews as being doable "when she has the energy."  (Tr. 14, 144.) She consistently stated her fatigue interfered with her daily activities.  Plaintiff's complaints of fatigue and pain were not rejected with "clear and convincing" evidence.  The ALJ's failure to include these non-exertional limitations in the hypothetical and final RFC findings is reversible error.

**D.   Remedy**

The record includes evidence that might be a basis to discount Plaintiff's specific allegations regarding the severity of her symptoms and limitations.  However, without the assertion of "clear and convincing" reasons (supported by the record) by the fact-finder, the court can neither assume Plaintiff's lack of credibility, nor can the court make independent findings; the reviewing court "is constrained to review the reasons the ALJ asserts."  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (*citations omitted*).  Where evidence has been identified that may be a basis for a credibility finding, but the findings are not articulated, remand is the proper disposition.  *Gonzalez v. Sullivan*, 914 F.2d 1197, 1202 (9th Cir. 1990).  *Id.*  Further, additional consultative examinations are needed to properly evaluate

the medical evidence and Plaintiff's residual functional capacity.

On remand, the ALJ will further develop the record, obtain medical expert testimony if necessary, summarize the medical evidence considered, conduct a new sequential evaluation, make new credibility findings with specificity, make a new RFC determination which includes limitations caused by severe and non-severe impairments, and take vocational expert testimony at step five. The ALJ should consider the record in its entirety, including unrejected medical opinions and Plaintiff's unrejected testimony. Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 21)** is **GRANTED**. The captioned case is **REVERSED** and **REMANDED** to the Commissioner of Social Security for further administrative proceedings consistent with the decision above and pursuant to sentence four of 42 U.S.C. § 405(g).

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 24)** is **DENIED**.

3. An application for attorney fees may be made by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. The file shall be **CLOSED** and judgment entered for **PLAINTIFF**.

DATED December 1, 2008.


                        S/ CYNTHIA IMBROGNO
                    UNITED STATES MAGISTRATE JUDGE